The STATE of Ohio, Appellee,

v.

LANG, a.k.a. McCoy, Appellant.

[Cite as *State v. Lang* (1996), 117 Ohio App.3d 29.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–950912 and C–950927.

Decided Dec. 24, 1996.

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Philip R. Cummings,* Assistant Prosecuting Attorney, for appellee.

*Faulkner & Tepe* and *A. Norman Aubin,* for appellant.

HILDEBRANDT, Judge.

Appellant Edward Lang was charged with two counts of aggravated trafficking, in violation of R.C. 2925.03(A)(2) and 2925.03(A)(6).[1] A jury found him guilty of both counts, and he was sentenced as appears of record. Lang appeals his conviction, asserting in his one assignment of error that the search of his trunk was an illegal search and seizure and that the "jury should not have found Lang guilty beyond a reasonable doubt at trial when the evidence as to possession was inconclusive at best and non-existent at worst."[2]

The facts are as follows. Around 11 p.m. on August 14, 1995, Cincinnati Police Sergeant Donald Luck was patrolling Metropolitan Housing Authority property in Winton Terrace Findlater Gardens ("Winton Terrace"), an alleged high-crime and drug-trafficking area, when he noticed a stopped car. The car was driven by Nathan Hill. Sergeant Luck testified that three young African–American men stood around the car, and that one of the men was leaning toward the passenger's window. When the marked police vehicle approached, the gentleman leaning stood up and abruptly left, and the young men fled from the area. Sergeant Luck checked the license plate number of the car Hill was driving and discovered that it was registered to an individual who resided outside the Winton Terrace area.

---

1. Nathan Hill was also charged in connection with this event, but pleaded guilty to reduced charges.

2. Lang filed an appeal *pro se* under case No. C–950927, which was consolidated by this court with this appeal.

Based on these facts, Sergeant Luck, a ten-year veteran of the police force, decided "to see what his [Hill's] business was on Metropolitan Housing Authority Property." Sergeant Luck testified that he believed that he might have witnessed a drug transaction.[3]

Hill began to drive away and Sergeant Luck followed. After traveling a short distance, Hill stopped the car on his own accord on a public street. Sergeant Luck then turned on the lights of his police car, pulled his car behind Hill and asked to see Hill's driver's license. Hill, however, had no driver's license. Sergeant Luck therefore issued Hill a citation and informed Hill that he would be unable to drive the car further. At this point, Lang, who was nearby, stepped forward, claimed ownership of the car and stated that he would drive the car home.[4]

Before Lang could take the car, Sergeant Luck shined his flashlight into the interior of the vehicle. Sergeant Luck spotted what he believed to be a bag of crack cocaine partially covered by a piece of paper on the passenger seat.[5] Upon seeing the cocaine, Sergeant Luck testified that he planned to hold the vehicle for forfeiture. He testified that he completed an inventory search of the automobile's contents, following normal police procedures. Sergeant Luck further testified that he checked the trunk and that Lang told him that all the contents therein belonged to Lang. While looking in the trunk, Lang took a small box from one side of the trunk and tossed it on top of a purse on the other side. Lang told Sergeant Luck that the purse contained $1,800, which belonged to his girlfriend. Sergeant Luck opened the purse and found approximately $3,250 and some cocaine. Next to the purse, in a brown lunch bag, Sergeant Luck found more cocaine. He then placed Lang under arrest. Based on these facts, the trial court denied Lang's motion to suppress.

■ Lang's assignment of error raises two distinct questions, which we will address separately. First, Lang contends that the seizure of contraband from his automobile violated his Fourth Amendment right to be free from unreasonable searches and seizures and that, therefore, the trial court should have granted his motion to suppress the evidence seized from his trunk. In his motion to suppress, Lang contested the search of his automobile on the ground that the

---

3. We note that none of the men standing around Hill's car were arrested or charged with a criminal offense in connection with these events.

4. Although the car at issue was registered in the name of Carrie Baker, Lang's girlfriend, it was not disputed below that the car belonged to Lang.

5. There were two Baggies of cocaine on the front seat, containing 7.40 grams of cocaine.

police lacked probable cause to conduct a warrantless search. This assignment of error is overruled.

■ Initially, in his argument, Lang questions the sufficiency of the probable cause to stop the automobile. Even assuming for the sake of argument that Sergeant Luck seized Hill pursuant to an investigatory stop in contravention of the principles of *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889,[6] we believe that that seizure is irrelevant to the analysis of Lang's motion. It is axiomatic that Fourth Amendment rights are personal and cannot be vicariously asserted. *Rakas v. Illinois* (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387.[7] In other words, "[s]uppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search [or seizure] itself, not by those who are aggrieved solely by the introduction of damaging evidence." *Alderman v. United States* (1969), 394 U.S. 165, 171–172, 89 S.Ct. 961, 965, 22 L.Ed.2d 176, 185–186. Lang, who was neither a passenger nor the driver of the vehicle when it was allegedly stopped, has no standing to contest a violation of his rights based solely on the allegedly improper seizure of Hill.

It is uncontroverted that Hill stopped the vehicle on his own accord, prior to any show of authority by Sergeant Luck. Lang watched Sergeant Luck from behind the sidewalk while the sergeant spoke with Hill and did not make his presence known until Sergeant Luck informed Hill he would not be permitted to drive the vehicle because he lacked a driver's license. Lang then approached the sergeant and claimed ownership of the vehicle, expressing a desire to take it. This interaction between Lang and Sergeant Luck was an encounter outside the boundaries of the Fourth Amendment in that Lang initiated the contact. There is no evidence to demonstrate any assertion of authority by the police towards Lang at this point. See *United States v. Pajari* (C.A.8, 1983), 715 F.2d 1378. Prior to any detention of Lang, Sergeant Luck, standing upright and from the outside of the car, which was parked on a public street, shined his flashlight into

---

**6.** A seizure of a person occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry*, 392 U.S. at 19, 88 S.Ct. at 1879, 20 L.Ed.2d at 905, fn. 16. See *California v. Hodari D.* (1991), 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690. Arguably in this case, since Hill voluntarily stopped the vehicle prior to any showing of authority by Officer Luck, there was no investigatory stop made by an officer such that any Fourth Amendment concerns were triggered. See *United States v. Pajari* (C.A.8, 1983), 715 F.2d 1378; *State v. Osborne* (Dec. 13, 1995), Montgomery App. No. CA 15151, unreported, 1995 WL 737913 (a person who is followed by a police officer and pulls over without any signal from the officer has not been seized).

**7.** Both the passenger and the driver of a vehicle "have standing regarding the legality of a stopping because when the vehicle is stopped, they are equally seized, and their freedom of movement is equally affected." *State v. Carter* (1994), 69 Ohio St.3d 57, 63, 630 N.E.2d 355, 360 (Appendix).

the interior of the car, and viewed crack cocaine on the front passenger seat. It was at this juncture that Lang's Fourth Amendment rights could conceivably have been triggered.

However, under the facts of this case as they pertain to Lang, we do not believe Fourth Amendment analysis is applicable to each stage of the episode that culminated in the seizure of the cocaine from Lang's trunk. "The Fourth Amendment protects against unreasonable government intrusions into areas where legitimate expectations of privacy exist." *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, citing *United States v. Chadwick* (1977), 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538. Where a police officer finds cocaine in the front seat of a vehicle parked on a public street, there has been no invasion of a legitimate expectation of privacy. "As a general rule, one does not have a reasonable expectation of privacy in common or public areas. When others have access to an area, the accused assumes the risk that others will observe the items left in open view. While the accused may have a subjective expectation of privacy in his car while parked in a business lot [or a public street], it is not one * * * society is prepared to recognize as reasonable." *State v. Claytor*, 85 Ohio App.3d at 633, 620 N.E.2d at 913 (Harsha, P.J., concurring); *State v. Harris* (1994), 98 Ohio App.3d 543, 649 N.E.2d 7.

The dissent examines the propriety of the discovery of the evidence on the front seat of the vehicle under the "plain view" doctrine, which does invoke Fourth Amendment analysis in that it occurs when a search is in progress. We believe, however, that a different sort of plain view, which does not trigger Fourth Amendment concerns as to the discovery of the cocaine in the front seat, is more applicable. The distinctions between these two analyses are as follows:

" 'The fact that there is a plain view in the *Coolidge* [*v. New Hampshire* (1971) 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564] sense does not mean that there has been no search; indeed, the situations described by Justice Stewart are in the main search situations—pursuant to a warrant naming other objects, search during hot pursuit, search incident to arrest, and a search for purposes other than finding evidence. Rather, the effort in *Coolidge* is to describe when items so found may be seized even though they were not the items which were legitimate objectives of that search. The *Coolidge* plurality identifies three requirements: (1) there must be a prior valid intrusion; (2) the discovery of the seized items must be inadvertent; and (3) it must be immediately apparent to the police that they have evidence before them. The significance of these requirements in terms of justifying a warrantless seizure of evidence is discussed at several points in this Treatise.

" '*By comparison, the concern here is with plain view in a quite different sense, namely, as descriptive of a situation in which there has been no search at*

*all in the Fourth Amendment sense. This situation, which perhaps is deserving of a different label so as to avoid confusion of it with that discussed in Coolidge, encompasses those circumstances in which an observation is made by a police officer without a prior physical intrusion into a constitutionally protected area.* This includes the case in which an officer discovers an object which has been left in an 'open field' or similar nonprotected area, and also *those cases in which an officer—again, without making a prior physical intrusion—sees an object* on the person of an individual, within premises, or *within a vehicle.* In each of these instances there has been no search at all because of the plain view character of the situation, and this means that the observation is lawful without the necessity of establishing either pre-existing probable cause or the existence of a search warrant or one of the traditional exceptions to the warrant requirement.

■ " 'It is extremely important to understand that the kind of plain view described in the preceding paragraph, because it involves no intrusion covered by the Fourth Amendment, need not meet the three requirements set out in the *Coolidge* plurality opinion. By definition, there is no prior valid intrusion. Whether it is immediately apparent that what has been observed is evidence of crime may have a bearing upon what the police may do as a result of this nonsearch observation, but it is clearly irrelevant to the threshold issue of whether the observation was a search.' (Footnotes omitted and emphasis added.) 1 LaFave, Search and Seizure (2 Ed.1987) 321–322, Section 2.2(a)." *State v. Claytor,* 85 Ohio App.3d at 632–633, 620 N.E.2d at 912.

See, also, *State v. Harris,* 98 Ohio App.3d at 546–547, 649 N.E.2d at 9–10; *State v. Copper* (Jan. 29, 1996), Ross App. No. 95 CA 2120, unreported, 1996 WL 46482. Thus, observation of contraband in a vehicle on a public street without physical intrusion does not constitute a search. *State v. Butler* (May 23, 1996), Cuyahoga App. No. 68581, unreported, 1996 WL 273766. Accord *Arizona v. Hicks* (1987), 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347; *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502; *State v. Copper, supra; State v. Snyder* (Aug. 25, 1995), Wood App. No. WD–94–098, unreported, 1995 WL 504758; *State v. Harris, supra; State v. Claytor, supra; State v. Isaac* (May 21, 1980), Hamilton App. No. C–790500, unreported. Further, the fact that Sergeant Luck used a flashlight to better see into Lang's automobile "trenched upon no right secured * * * by the Fourth Amendment." *Texas v. Brown, supra,* at 740, 103 S.Ct. at 1542, 75 L.Ed.2d at 512. Because the cocaine was in open view, Sergeant Luck was permitted to view it without any violation of the Fourth Amendment's prohibition against unreasonable searches. Further, the viewing of the contraband created the necessary probable cause to intrude into the automobile and seize the two Baggies of cocaine on the front passenger seat.

See *State v. Harris, supra; Colorado v. Bannister* (1980), 449 U.S. 1, 101 S.Ct. 42, 66 L.Ed.2d 1; *Texas v. Brown, supra.*[8]

As to the subsequent warrantless search of Lang's trunk, this court has previously set forth the required analysis:

"It is now well settled that the absence of a warrant does not render an automobile search invalid on constitutional grounds. All that is required to support a warrantless intrusion is probable cause to believe that a particular vehicle is carrying evidence of a crime. *Michigan v. Thomas* (1982), 458 U.S. 259, 102 S.Ct. 3079 [73 L.Ed.2d 750]; *Chambers v. Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975 [26 L.Ed.2d 419]; *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280 [69 L.Ed. 543]. When probable cause is found to exist under the facts and circumstances of a given case, law enforcement officers have the necessary constitutional justification to explore any areas in the vehicle, such as locked trunks and glove compartments, that may reasonably contain the object of their search. *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157 [72 L.Ed.2d 572]; *State v. Welch* (1985), 18 Ohio St.3d 88 [18 OBR 124], 480 N.E.2d 384." *State v. Baker* (Jan. 30, 1987), Hamilton App. No. C–860017, unreported, 1987 WL 5811. See, also, *Michigan v. Thomas* (1982), 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750; *United States v. Riedesel* (C.A.8, 1993), 987 F.2d 1383.

We are persuaded that the discovery of the Baggies of cocaine in open view on the front seat of the vehicle provided Sergeant Luck the required probable cause to search the vehicle's trunk.

In his argument supporting the second portion of his assignment of error, Lang contends that the jury's finding of guilt was against the manifest weight of the evidence, but he then addresses sufficiency concerns. Thus, we will address both the sufficiency and the weight of the evidence.

"The test for the sufficiency of evidence is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the elements of the crime beyond a reasonable doubt." *State v. Allen* (1995), 73 Ohio St.3d 626, 630, 653 N.E.2d 675, 682. Under this test, a reviewing court does not weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717. In contrast, the review of a manifest-weight-of-the-evidence claim requires this court to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and

---

8. Even assuming that the plain view analysis as set forth by the dissent applied, we perceive no problem with Sergeant Luck seizing the cocaine. He was in a place where he had the right to be, *i.e.,* a public street after being approached by Lang, and the cocaine in the front seat of the vehicle was clearly incriminating contraband, which he had a right to seize.

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 175, 20 OBR at 219, 485 N.E.2d at 720. See *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652. Both "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Officer Luck testified that he found two Baggies of cocaine on the front passenger seat and that, in the trunk, he found the purse, the money and some cocaine bundled in the money, which Lang tried to cover with the small box. He testified that the cocaine he found in the paper bag in the trunk was bundled as if for sale on the street. The drug analyst of the Hamilton County Coroner's office testified that the cocaine found in Lang's automobile was over three times the bulk amount of cocaine. Lang's girlfriend testified that she had never seen the purse before and that the money did not belong to her.

Hill testified that he approached Lang to buy cocaine and that Lang told him that he had some on the front seat of his automobile and asked Hill to get into the vehicle. Hill had known Lang for some time and the two of them had worked on the vehicle earlier in the afternoon. Hill stated that he had no idea what was in the trunk of the automobile. Hill denied that the money and the cocaine found in the automobile were his.

Lang testified that he gave Hill his automobile so Hill could fix the brakes and did not see it again until Hill and Officer Luck stopped beside the road. Lang testified that he gave Officer Luck permission to search his vehicle. He denied being alongside Officer Luck when he searched the trunk, that he identified the money as his girlfriend's, and that he threw a box over the purse. Officer Brazile, who had previously testified on Lang's behalf about Lang's community service and who had responded to a call from the scene, testified on rebuttal that Officer Luck received consent to search the automobile and that he observed Lang standing next to Officer Luck when he found the purse. Based on the above evidence, we conclude that the evidence was substantial enough for the jury to have reasonably concluded that the state had proved beyond a reasonable doubt that Lang had engaged in drug trafficking as set forth in R.C. 2925.03(A)(2) and (A)(6). Furthermore, we are not persuaded from our review of the record that the jury, in resolving conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice. Appellant's assignment of error is overruled.

Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

Doan, J., concurs separately.

Marianna Brown Bettman, P.J., dissents.

Doan, Judge, concurring separately.

I concur separately only to state that had it been necessary to determine for the disposition of this appeal whether the initial stop of Hill was supported by a reasonable, articulable suspicion that he had been engaged in criminal activity pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, I believe that the initial stop was valid. The totality of the circumstances in this case, which include the observations of a trained police officer of several young men, at 11:00 p.m., gathering near a vehicle, with one of the men leaning into the driver's side of the vehicle while the driver remained inside, in a high-crime area, followed by the young men fleeing upon the approach of a police cruiser, supports a reasonable suspicion that Hill was engaged in criminal activity. See *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271; *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489.

Marianna Brown Bettman, Presiding Judge, dissenting.

In his motion to suppress, Lang contested the search of his car (driven by Hill) on the ground that the police lacked probable cause to conduct a warrantless search. The state defends the warrantless search and seizure on the basis of the "plain view" exception to the Fourth Amendment warrant requirement, arguing that the discovery of contraband in plain view on the front seat of Lang's car gave Sergeant Luck probable cause to search the trunk of Lang's car.[9]

In accordance with *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, a reviewing court examines *de novo* the issues of reasonable suspicion and probable cause in a motion to suppress.

The fact that an item is in "plain view" is never enough to justify the warrantless seizure of evidence. *Texas v. Brown* (1983), 460 U.S. 730, 738, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502, 511; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 468, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564, 584. In order to prevail in an argument based on the "plain view" exception to the warrant requirement, the state has to prove two things: that the initial intrusion leading to the item's

---

9. To suppress evidence obtained pursuant to a warrantless search, a defendant is required to "raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph one of the syllabus. Once this is done, "the prosecutor bears the burden of proof, including the burden of going forward with evidence, on the issue of whether probable cause existed for the search or seizure." *Id.* at paragraph two of the syllabus.

discovery was lawful and that it was "immediately apparent" that the item was incriminating. *State v. Waddy* (1992), 63 Ohio St.3d 424, 442, 588 N.E.2d 819, 833, citing *Coolidge, supra,* at 466, 91 S.Ct. at 2038, 29 L.Ed.2d at 583. I have no problem at all accepting the state's argument that it was immediately apparent that what was on the front seat was contraband. However, I believe that the initial intrusion by the police which ultimately led to the discovery of the contraband in Lang's car trunk was unlawful. Therefore, I would sustain this part of the assignment of error.

First, I disagree with my colleagues' assertion that it was "uncontroverted" that Nathan Hill stopped the car he was driving of his own accord without any show of authority by Sergeant Luck. I believe that the record demonstrates, and so did the trial court, that the stop and subsequent questioning of Hill by Sergeant Luck were not consensual.

I also disagree with my colleagues in the majority that Lang had no standing to challenge the search. When Hill was cited for driving without a license, he was refused permission to move the car. At that point, Lang stepped forward and stated that he owned the car. This ownership interest was not challenged. Therefore, Lang has standing to challenge the search of his car. *Rakas, supra; State v. Carter* (1994), 69 Ohio St.3d 57, 630 N.E.2d 355; *State v. Painter* (Apr. 11, 1994), Clinton App. Nos. CA–9307022 and CA–9307024, unreported, 1994 WL 118985. Since the state defends this search on the basis of the "plain view" exception to the warrant requirement, it has the burden pursuant to *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, and *Waddy,* 63 Ohio St.3d 424, 588 N.E.2d 819, *supra,* of proving the validity of the initial stop.

Before making an investigatory stop of an automobile, a police officer must have reasonable, articulable suspicion that the person to be detained is or has been involved in criminal activity. *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. The propriety of an investigative stop should be examined in light of the totality of the surrounding circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus.

Under the facts of this case, no reasonable, articulable suspicion existed for the initial stop. Sergeant Luck became suspicious after checking the license plates on the car Hill was driving and finding the car registered to an address outside Winton Terrace. The fact that a car is outside of the neighborhood where its registered owner lives is hardly incriminating. This fact, combined with the simple observation of individuals in a high-crime area standing by a car and the dispersal of these individuals as a police car approaches does not create reasonable, articulable suspicion that criminal activity is afoot. *Terry, supra; State v. Carter* (1994), 69 Ohio St.3d 57, 630 N.E.2d 355; cf. *State v. Fincher* (1991), 76 Ohio App.3d 721, 603 N.E.2d 329; *State v. Arbogast* (Dec. 29, 1995), Hamilton

40

App. Nos. C–950315 and C–950316, unreported, 1995 WL 763689. Acts that are essentially neutral or ambiguous in nature do not become specifically criminal in character because they occur in a high-crime area. *Carter, supra; State v. Chandler* (1989), 54 Ohio App.3d 92, 560 N.E.2d 832; *State v. Martin* (Jan. 25, 1995), Montgomery App. No. 14275, unreported, 1995 WL 29218.

Since I believe (1) that the encounter between Hill and Sergeant Luck was not a consensual one, and (2) that this initial intrusion which ultimately led to the discovery and seizure of evidence from Lang's car was not lawful, I believe that the plain-view exception to the warrant requirement of the Fourth Amendment does not apply. I also believe that the contraband seized from Lang's trunk should have been suppressed, since the exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also reaches evidence derived from such illegality (commonly referred to as the "fruit of the poisonous tree"). *Wong Sun v. United States* (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. Therefore, I would hold that the trial court erred by refusing to grant Lang's motion to suppress the evidence seized from his car.