DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Angelo Moore, has appealed from his convictions in the Summit County Court of Common Pleas and from a judgment of that court imposing a fine. This Court affirms.
 I. {¶ 2} On March 2, 2004, Appellant was indicted for one count of possession of cocaine in violation of R.C. 2925.11(A); one count of possessing criminal tools in violation of R.C. 2923.24; two counts of having a weapon while under a disability in violation of R.C. 2923.13(A); one count of trafficking in marijuana in violation of R.C. 2925.03(A)(2); and one count possession of marijuana in violation of R.C. 2925.11(A). Appellant pled not guilty to each of these charges. On March 29, 2004, Appellant filed a motion to suppress all evidence seized by the police on the ground that it was taken in violation of his Fourth Amendment rights. Following a hearing, the trial court denied this motion.
 {¶ 3} The matter proceeded to a jury trial on May 2, 2004. Appellee dismissed count six of the indictment, possession of marijuana in violation of R.C. 2925.11(A). The jury found Appellant not guilty of trafficking in marijuana and found Appellant guilty of each of the remaining charges. The trial court sentenced Appellant to a total of nine years incarceration for the convictions and imposed a fine pursuant to R.C. 2929.18(B).
 {¶ 4} Appellant timely appealed, raising four assignments of error for our review.
 II. ASSIGNMENT OF ERROR NO. 1
"THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE AKRON POLICE OFFICERS VIOLATED HIS FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEI[Z]URE WHEN THEY: 1) UNLAWFULLY STOPPED HIS VEHICLE WITHOUT REASONABLE [SUSPICION] OF CRIMINAL ACTIVITY; AND, 2) UNLAWFULLY PERFO[R]MED AN ILLEGAL SEARCH ON HIS VEHICLE, PERSON AND HOME WITHOUT PROBABLE CAUSE AND NOT INCIDENT TO LAWFUL ARREST."
 ASSIGNMENT OF ERROR NO. 2
"THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO SUPPRESS BECAUSE THE EVIDENCE OBTAINED BY AKRON POLICE OFFICERS WAS OBTAINED ILLEGALLY AND THEREFORE, SHOULD HAVE BEEN EXCLUDED PURSUANT TO THE DOCTRINE FRUIT OF THE POISONOUS TREE."
 {¶ 5} In his first and second assignments of error, Appellant argues that the trial court erred by denying his motion to suppress. We disagree.
 {¶ 6} A trial court's ruling on a motion to suppress evidence presents a mixed question of law and fact to the reviewing court. State v. Long
(1998), 127 Ohio App.3d 328, 332. This Court will accept the factual findings of the trial court if they are supported by some competent and credible evidence. State v. Searls (1997), 118 Ohio App.3d 739, 741. The application of the law to those facts, however, will be reviewed de novo. Id.
 {¶ 7} At the suppression hearing, the State called Detectives Mike Schmidt and Chris Carney of the Akron Police Department as its witnesses. The testimony of the two detectives yields the following account of the searches and seizures challenged by Appellant.
 {¶ 8} On the evening of February 19, 2004, Detective Schmidt was observing an apartment building at 2159 22nd Street in Akron. Earlier that day, he had arrested a known drug dealer for possession of crack cocaine, after observing that individual enter the apartment building and leave a few minutes later. Detective Schmidt was informed that Appellant was the occupant of the apartment which the known drug dealer had visited and was given a description of the car driven by Mr. Moore. Detective Schmidt had a LEADS report run on the license plate of a vehicle matching that description and learned that the vehicle was registered to Appellant and that Appellant's driver's license was suspended.
 {¶ 9} Detective Schmidt then observed Appellant leave his apartment, enter the vehicle, and drive away from the parking lot. At that time, Detective Schmidt contacted Detectives Carney, Haverstick, and Danzy of the Akron Police Department, who were in uniform and in their police cruisers. Those officers stopped Appellant and told him that he was a suspect in a robbery, which was not true. The officers then placed Appellant under arrest for driving with a suspended license. After arresting Appellant, the officers patted him down and found 14 grams of crack cocaine. At this time, Detective Schmidt and Detective Harney returned to the police station to prepare an application for a warrant to search Appellant's home.
 {¶ 10} While they were waiting for the search warrant, the uniformed officers took a set of keys from Appellant and asked him which one was for the door to apartment. Appellant pointed out the apartment door key to the officers, without consenting to a search of his home. Believing that another person might be selling drugs inside Appellant's apartment, the officers entered the apartment and searched areas where a person might be concealed. The officers did not find anyone in Appellant's apartment. The officers then left the apartment, removed Appellant from the back of one of the police cruisers, returned to the apartment with him, and waited for the search warrant.
 {¶ 11} At approximately 10:55 p.m., the officers received a warrant to search Appellant's apartment. Detective Schmidt then returned to the apartment, and the officers executed the search. They discovered 71 grams of crack cocaine and two loaded handguns. The officers also found a box containing the registrations for two vehicles. Detective Carney went to the apartment building's parking lot and located those two vehicles.
 {¶ 12} After finding the vehicles, Detective Carney led a drug detecting dog to them. The dog "hit" on one of the vehicles, a 1996 Buick, indicating that it contained drugs. The officers had the two vehicles towed, secured them, and waited for a warrant to search the 1996 Buick. The next morning, after obtaining the warrant, the officers searched the 1996 Buick and discovered 899 grams of marijuana.
 {¶ 13} Appellant testified on his own behalf at the suppression hearing. His account of the events of the evening of February 19 differs from the officers' account in the following pertinent respects. First, Appellant maintained that the officers did not know which apartment was his before requesting the warrant. Lastly, Appellant contended that, before they obtained the warrant to search his apartment, the officers extended their search beyond a simple sweep for persons in the apartment.
 {¶ 14} Appellant also presented the testimony of Captain James Harris of the Akron Police Department. Captain Harris testified that he did not know whether or not any officers of the Akron Police Department were aware of the fact that Appellant's license was suspended prior to stopping him. Captain Harris also testified that, pursuant to defense counsel's request, he requested a report of LEADS records of scan made on license plate number F733207 on February 19. The records indicated that the police had not accessed the information on the plate on February 19, but that they had run a scan on the plate at five minutes after midnight on February 20.
 {¶ 15} The trial court resolved the conflicts between the parties' witnesses through the following findings of fact. First, the court found that the officers ran a LEADS check on the license plate attached to the car which Appellant was driving, a 1976 Buick, prior to stopping Appellant. The court found that the scan which Captain Harris testified about, which did not occur until well after Appellant was stopped, was run on the 1996 Buick which the officers found in the parking lot and later searched. The court also found that the police officers did know which apartment was Appellee's, as Officer Schmidt testified that he observed him exit it. Finally, the court found that, prior to obtaining a search warrant, the officers did not search Appellant's apartment, but only determined that there were no other individuals present in the apartment.
 {¶ 16} The trial court made the following conclusions of law: (1) the intial stop was lawful, as the police knew that Appellant's driver's license was suspended; (2) the search of Appellant's person was lawful, as it was incident to his arrest for driving without a license; (3) the police did not unlawfully search Appellant's apartment before receiving the warrant; and (4) the search of the 1996 Buick was proper, as it was conducted pursuant to a warrant.
 {¶ 17} Appellant has challenged the trial court's conclusions with respect to each of the four transactions at issue. We address each of those transactions in turn.
1. Initial stop
 {¶ 18} Police officers may stop and arrest an individual when there is probable cause that the individual in question committed a criminal offense. United States v. Watson (1976), 423 U.S. 411, 417. Probable cause exists when, at the time of the stop or arrest, police officers have knowledge of facts and circumstances sufficient to warrant a belief by a prudent person that an offense was committed and that the person to be stopped or arrested committed the offense. Beck v. Ohio (1964),379 U.S. 89, 91.
 {¶ 19} The trial court had competent, credible evidence before it that, at the time of Appellant's stop and arrest, the Akron police officers knew that Appellant's license was suspended and observed Appellant driving. Therefore, the trial court did not err by concluding that the initial stop and subsequent arrest of Appellant for driving with a suspended license was valid. Accord, State v. Freeman (Mar. 15, 2002), 11th Dist. No. 2001-T-0008.
2. Appellant's person
 {¶ 20} Once a person is under arrest, "[o]fficers may perform a full search of an arrestee's person regardless of the offense prompting the arrest." State v. Jones (2000), 88 Ohio St.3d 430, 439, citing UnitedStates v. Robinson (1973), 414 U.S. 218. The trial court had competent, credible evidence before it that the search of Appellant's person was conducted incident to his arrest for driving with a suspended license. Therefore, it did not err by concluding that this search was valid.
3. Appellant's apartment
 {¶ 21} Appellant has challenged the police officers' initial entry into his apartment, which occurred before the search warrant was issued. We need not reach the issue of whether or not the police officers' initial entry into and sweep of Appellant's apartment was valid, as the evidence seized from Appellant's apartment was admissible under the doctrine of inevitable discovery.
 {¶ 22} An exception to the exclusionary rule, the doctrine of inevitable discovery provides that evidence seized in violation of an individual's Fourth Amendment rights is admissible "if it can be shown that such evidence would ultimately and inevitably have been discovered lawfully." State v. Mitchell (Nov. 15, 1995), 9th Dist. No. 17029.
 {¶ 23} The chain of events disclosed by the record indicates that the search warrant was issued on the basis of information acquired before the officers entered Appellant's apartment. Therefore, the warrant could not have been tainted by any evidence discovered as a result of the officers' initial entry into and sweep of Appellant's apartment. In other words, the evidence discovered pursuant to the search warrant would have been discovered irrespective of the initial entry and sweep. Appellant has not, in this appeal, raised a direct challenge to the validity of the warrant to search his home. Therefore, we conclude that the evidence seized from his apartment was lawfully acquired, and we affirm the trial court's admission of it, albeit for reasons other than those relied upon by the trial court.
4. 1996 Buick
 {¶ 24} Finally, Appellant has challenged the search of a 1996 Buick. The trial court had competent, credible evidence before it that the vehicle was seized after a drug-sniffing dog indicated the presence of drugs in the vehicle and that the officers did not search the vehicle until they obtained a warrant to do so. The search was lawful on the basis of the response of the drug-sniffing dog alone; the officers were not required to take the extra step of obtaining a search warrant. SeeState v. Carlson (1995), 102 Ohio App.3d 585, 600, citing State v.Shook (June 15, 1994), 9th Dist. No. 93CA005716. Therefore, the trial court did not err by admitting the evidence seized from the 1996 Buick. Appellant's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR NO. 3
"THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE TRIAL COUNSEL FAILED TO PROPERLY SEEK THE UNSEALING OF THE AFFIDAVIT USED TO OBTAIN THE SEARCH WARRANT AND BECAUSE COUNSEL FAILED TO SEEK THE INITIAL BURDEN REQUIRED BY THE DOCTRINE OF THE FRUIT OF THE POISONOUS TREE; THEREBY, CAUSING PLAIN ERROR TO THE APPELLANT."
 {¶ 25} In his third assignment of error, Appellant maintains that he was denied the effective assistance of counsel at trial. We disagree.
 {¶ 26} The United States Supreme Court has provided a two-part test to determine whether counsel's assistance was ineffective such that a reversal of sentence or conviction is warranted. Strickland v.Washington (1984), 466 U.S. 668, 667. "First, the defendant must show that counsel's performance was deficient." Id. To show that counsel's performance was deficient, a defendant must prove "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, a defendant must establish that counsel's deficient performance resulted in prejudice to the defendant which was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.
 {¶ 27} Appellant contends that his trial counsel delivered a deficient performance by: (1) failing to offer evidence showing that all evidence seized by the police was tainted by the illegality of the initial stop; and (2) failing to adequately support his motion seeking to unseal the search warrant. Appellant's theory of ineffective assistance for each of these alleged failures is premised upon his argument that the initial stop of his vehicle was unlawful. Specifically, Appellant argues that, had his counsel offered proof that all of the evidence seized was tainted by the unlawful stop, he would have shifted the burden to Appellee to show that its evidence was untainted, with the likely result that the evidence would have been excluded. Additionally, Appellant argues that, had his counsel argued that the police officers' statements regarding the initial stop were either intentionally false or made with reckless disregard for the truth, the trial court would have likely unsealed the affidavit supporting the warrant to search his apartment.
 {¶ 28} Given our conclusion that the initial stop of Appellant's car was lawful, Appellant cannot establish that he was prejudiced by his counsel's alleged deficiencies, and therefore cannot establish the second prong of the Strickland test. Because the initial stop was lawful, any argument that all of the evidence seized following that stop was tainted "fruit of the poisonous tree" is without any merit. The trial court's conclusion that the stop was lawful reflects its determination that the officers' account of that stop was credible, and the record before us has given us no reason to disturb that determination. Appellant's arguments that challenges to the officers' credibility would have likely resulted in the unsealing of the affidavit are therefore without merit.
 {¶ 29} Appellant's third assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. 4
"THE TRIAL COURT ERRED BY FAILING TO PROPERLY DETERMINE WHETHER THE APPELLANT WAS TRULY INDIGENT AND THEREBY ERRED IN IMPOSING THE MANDATORY FINE PER R.C. 2929.18(B)(1)."
 {¶ 30} In his final assignment of error, Appellant maintains that the trial court erred by imposing a fine pursuant to R.C. 2929.18(B)(1). We disagree.
 {¶ 31} R.C. 2929.18(B)(1) provides, in pertinent part:
"For a first, second, or third degree felony violation of any provision of Chapter 2925., * * * the sentencing court shall impose upon the offender a mandatory fine of at least one-half of, but not more than, the maximum statutory fine amount authorized for the level of the offense pursuant to division (A)(3) of this section. If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender."
 {¶ 32} Appellant alleges that the trial court should not have imposed the fine required by R.C. 2929.18(B)(1), as he is indigent and unable to pay the fine. The plain language of the statute prohibits a trial court from imposing a fine where: (1) prior to sentencing, the offender has filed an affidavit stating that he is indigent and unable to pay the fine; and (2) the court itself determines that the offender is indigent and unable to fine. Our review of the record indicates that Appellant did not satisfy his burden under the statute, because he failed file an affidavit alleging that he was indigent and unable to pay the fine. Therefore, his argument that the trial court erred by imposing the fine is without merit. Appellant's fourth assignment of error is overruled.
 III. {¶ 33} Appellant's four assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J., Carr, J., Concur.