[Cite as *State v. Friedman*, ___ Ohio App.3d ___, 2011-Ohio-2989.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

| | | |
|---|---|---|
| THE STATE OF OHIO, | | C.A. No.   10CA0025 |
| Appellant, | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| FRIEDMAN, | | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellee. | | CASE No.   CRB-10-02-00224 |

DECISION AND JOURNAL ENTRY

Dated: June 20, 2011

Daniel R. Lutz, Wayne County Prosecuting Attorney, and Latecia E. Wiles, Assistant Prosecuting Attorney, for appellant.

William A. Lefaiver, for appellee.

WHITMORE, Judge.

{¶1}  Appellant, the state of Ohio, appeals from the judgment of the Wayne County Municipal Court, granting the motion to suppress of appellee, Rachel Friedman.  This court reverses.

I

{¶2}  On October 21, 2009, police officers from Ohio State University, who were assigned to the school's satellite campus in Wooster, led one of their canines along Franklin Court, a residential street on campus.  After the canine alerted on one of the parked vehicles on Franklin Court, the officers attempted to contact the vehicle's owner, Friedman.  Specifically, they went to Friedman's apartment, called her cell phone, and tried to locate her at the school's

activity center. When the officers failed to locate Friedman, they used a lockout device referred to as a "Big Easy" to open her locked vehicle and removed several items.

{¶3}  On February 18, 2010, the state filed a criminal complaint against Friedman for the possession of marijuana, in violation of R.C. 2925.11(A), and the possession of drug paraphernalia, in violation of R.C. 2925.14(C)(1). On March 24, 2010, Friedman filed a motion to suppress, challenging the warrantless search of her vehicle. The trial court held a hearing on Friedman's motion on May 4, 2010. The court granted the motion on May 7, 2010, concluding that the police lacked any justification to search Friedman's vehicle in the absence of a warrant.

{¶4}  The state now appeals from the trial court's judgment and raises one assignment of error for our review.

II

Assignment of Error

The trial court erred in granting Rachel Friedman's motion to suppress on the basis that a search was improperly conducted on her vehicle.

{¶5}  In its sole assignment of error, the state argues that the trial court erred by granting Friedman's motion to suppress. Specifically, it argues that the police lawfully searched Friedman's vehicle, which was parked in a public area, based on probable cause arising from a canine sniff. We agree.

{¶6}  The Ohio Supreme Court has held that:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial

court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706.

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶8. Accordingly, this court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, at ¶6, citing *Burnside* at ¶8.

{¶7} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. Section 14, Article I of the Ohio Constitution contains language nearly identical to that of the Fourth Amendment and similarly prohibits unreasonable searches and seizures. Although the Fourth Amendment recognizes that individuals have privacy interests in their vehicles, the inherent characteristics of vehicles "justif[y] a lesser degree of protection of [the privacy] interests [in them]." *California v. Carney* (1985), 471 U.S. 386, 390. See also *Chambers v. Maroney* (1970), 399 U.S. 42, 48; *Carroll v. United States* (1925), 267 U.S. 132, 153. "Once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he or she may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement." *State v. Moore* (2000), 90 Ohio St.3d 47, 51, citing *Maryland v. Dyson* (1999), 527 U.S. 465, 466. "[T]he concept of exigency underlies the automobile exception to the warrant requirement." *Moore* at 52. Yet, "the 'automobile exception' has no separate exigency requirement." *Dyson* at 466. Accord *United States v. Ross* (1982), 456 U.S. 798, 809 ("In this class of cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained"). "All that is required to support a warrantless intrusion is probable cause to believe that a particular vehicle is carrying evidence

of a crime." *State v. Lang* (1996), 117 Ohio App.3d 29, 36. Accord *State v. Underwood*, 12th Dist. No. CA2003-03-057, 2004-Ohio-504, at ¶14-19; *State v. Moore*, 9th Dist. Nos. 22146 and 22216, 2005-Ohio-3304, at ¶24.

{¶8} The facts that emerged at the suppression hearing are not in dispute. At approximately 8:30 p.m. on October 21, 2009, a canine working with police officers on assignment from Ohio State University alerted on a parked, locked car on a residential street on campus. The police identified Friedman as the owner of the vehicle and attempted to contact her over the course of the next 20 to 30 minutes. Specifically, the police identified Friedman's apartment residence, spoke with her roommate, called her cell phone, and went to the school's activity center after her roommate suggested that she might be exercising there. When the police were unable to contact Friedman, they used a lockout tool to gain access to her vehicle. The police did not secure a warrant before entering Friedman's vehicle. According to the officers who testified, they accessed the vehicle at that time because they did not have enough officers on duty to stay with the vehicle in the event that Friedman returned.

{¶9} The sole issue at the suppression hearing was whether the police, having probable cause to believe that Friedman's vehicle contained contraband, needed to procure a warrant before searching it. Friedman conceded that probable cause arose as a result of the canine sniff that occurred. She also did not challenge the method the police employed to obtain probable cause; namely, selecting a residential street on campus and subjecting all the cars on that street to a canine sniff. Her sole argument was that once they had probable cause that her vehicle contained contraband, the police needed either her consent or an exception to the warrant requirement before conducting their search. Because they had neither, Friedman argued, their search was unlawful.

{¶10} The trial court granted Friedman's motion, concluding that no justification for the warrantless search existed. The trial court distinguished this case from cases in which a vehicle search ensues as a result of a valid traffic stop and canine sniff on the basis that Friedman was not detained along with her vehicle. Because the vehicle was parked and locked in Friedman's absence, the court reasoned, there was no danger of her immediately driving out of the area. Moreover, the court emphasized the fact that Friedman's vehicle was parked at her place of residence, thereby reasoning that the vehicle's physical location further distinguished it from a vehicle stopped on a roadway in the course of a traffic stop.

{¶11} The fact that Friedman's vehicle was parked on a residential street did not entitle her to any greater privacy interest than a driver whose vehicle is detained on a roadway pursuant to a valid traffic stop. See, e.g., *Underwood,* 2004-Ohio-504, at ¶14-20 (upholding search of parked vehicle and concluding that "[t]he immobilization of the vehicle or a low probability of its being moved or evidence being destroyed does not remove the officers' justification to conduct a search pursuant to the automobile exception"); *Lang*, 117 Ohio App.3d at 34, quoting *State v. Claytor* (1993), 85 Ohio App.3d 623, 633 (Harsha, P.J., concurring) (" 'While the accused may have a subjective expectation of privacy in his car while parked in a business lot [or a public street], it is not one * * * society is prepared to recognize as reasonable' "). Under either scenario, officers are performing their duties in a place where they are legally entitled to be. See generally *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 305-306. The question is whether the search of Friedman's vehicle, which was locked and parked in a public area, is deserving of more scrutiny than a vehicle search conducted in the course of a valid traffic stop. This court must conclude that no meaningful distinction exists between the two searches so as to warrant different results.

{¶12} "[O]nce a trained drug dog alerts to the odor of drugs from a lawfully detained vehicle, an officer has probable cause to search the vehicle for contraband." *State v. Carlson* (1995), 102 Ohio App.3d 585, 601. Accord *State v. White*, 9th Dist. No. 23522, 2008-Ohio-657, at ¶15-16; *Moore,* 2005-Ohio-3304, at ¶24; *State v. Shook* (June 15, 1994), 9th Dist. No. 93CA005716, at *5. In upholding the search of a vehicle parked outside a defendant's apartment, this court noted that "[t]he search was lawful on the basis of the response of the drug-sniffing dog alone; the officers were not required to take the extra step of obtaining a search warrant." *Moore* at ¶24. We see no reason to depart from that conclusion in the instant case. While canine sniffs that give rise to vehicle searches often occur as the result of a traffic stop, we are not convinced that a traffic stop is a condition precedent to such a search, such that the absence of a stop invalidates the search.

{¶13} The canine sniff in this instance gave rise to probable cause that Friedman's vehicle contained contraband, and the officers searched the vehicle pursuant to that conclusion. Id. See also *Lang*, 117 Ohio App.3d at 36 ("All that is required to support a warrantless intrusion is probable cause to believe that a particular vehicle is carrying evidence of a crime"). Although Friedman's vehicle was parked and locked at the time of the search, there was no way for the officers at the scene to anticipate when Friedman would return. See *Pennsylvania v. Labron* (1996), 518 U.S. 938, 940 ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more"). Her whereabouts were unknown, despite the officers' attempting to contact her at her residence, on her cell phone, and at the school's activity center. Further, there was testimony that there were not enough officers on duty to post an officer with the vehicle. The fact that Friedman was not present when the officers developed probable cause does not detract

from the inherent mobility of her vehicle or render inapposite the application of the automobile exception to the warrant requirement. See *Carney*, 471 U.S. at 390; *Chambers*, 399 U.S. at 48; *Carroll*, 267 U.S. at 153. Probable cause that Friedman's vehicle contained contraband arose as a result of the canine sniff that was performed. *Carlson*, 102 Ohio App.3d at 601. The officers in question did not violate Friedman's Fourth Amendment rights as a result of the search they performed. Consequently, the trial court erred by granting her motion to suppress. The state's sole assignment of error is sustained.

### III

{¶14} The state's sole assignment of error is sustained. The judgment of the Wayne County Municipal Court is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed
and cause remanded.

DICKINSON, J., concurs.

CARR, P.J., dissents.

CARR, Presiding Judge, dissenting.

{¶15} I respectfully dissent because I cannot agree that the state met its burden at the suppression hearing. In fact, the evidence presented by the state was so deficient that it failed to reveal what areas of Friedman's vehicle were searched, what incriminating evidence was found, or where the officers found it. I do not believe that this court can or should address the isolated issue of whether a search warrant was required to enter the vehicle, as we are presented with too limited a record and the necessity of a warrant does not resolve the ultimate question at the

suppression hearing: whether the subsequent search of Friedman's vehicle and seizure of evidence from it were constitutional.

{¶16} Searches conducted outside the judicial process, without a warrant, are per se unreasonable, subject to a few specifically established exceptions. *Athens v. Wolf* (1974), 38 Ohio St.2d 237, 239. The state had the burden of showing, by at least a preponderance of the evidence, that the search of Freidman's vehicle, and ultimate seizure of evidence, fell within a recognized exception to the Fourth Amendment's requirement of a warrant. Id. at 241, citing *Chimel v. California* (1969), 395 U.S. 752, 761, and *Lego v. Twomey* (1972), 404 U.S. 477, 488.

{¶17} The state's burden to demonstrate the propriety of its warrantless search and seizure was not limited to the officers' initial decision to open the vehicle and commence its search without a warrant. "The question remains whether, apart from the lack of a warrant, this search was unreasonable." *California v. Carney* (1985), 471 U.S. 386, 394. The "'touchstone of the Fourth Amendment is reasonableness,'" which is "measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette* (1996), 519 U.S. 33, 39, quoting *Florida v. Jimeno* (1991), 500 U.S. 248, 250, 114 L.Ed.2d 297. Given the limited record before us, we cannot begin to examine the totality of the circumstances.

{¶18} Friedman was charged with possession of marijuana and possession of drug paraphernalia, described as a glass smoking pipe. Aside from the charges against her, which suggest that the state discovered marijuana and a glass smoking pipe in her possession, there is nothing in the record to indicate what evidence was apparently seized from her vehicle. She filed a broad motion to suppress, asserting that evidence had been seized from her vehicle in violation of her Fourth Amendment rights. Prior to the commencement of the suppression hearing, the parties met with the trial judge and agreed to narrow the legal issues. Friedman did

not dispute that a drug dog had alerted to the exterior of her vehicle, which was parked and locked on public property, and that she was not present at the scene. The hearing was explicitly limited to the subsequent warrantless search and seizure. Ultimately, however, the state confined its evidence almost exclusively to facts that preceded the officers' decision to enter Friedman's vehicle without obtaining a warrant. Evidence of what happened after the officers opened the car door is noticeably lacking from the record.

{¶19} Most of the evidence at the hearing focused on the officer's unsuccessful attempts to locate Friedman. A warrantless search of her vehicle then ensued, but we are left to speculate about what happened after the police officers opened the car door. The only testimony about the search was that the drug dog went into the vehicle "and hit on a couple areas" and then the two officers "basically divided the vehicle in half," with one officer searching the driver's side and the other searching the passenger side. The state presented no evidence about how the officers conducted the search, what specific areas of the vehicle or items within it were searched, or where and what items of contraband were found. I cannot agree to reverse the trial court's suppression order without any evidence to demonstrate that the search and seizure were reasonable.

{¶20} The officers' entry into Friedman's vehicle without a warrant was merely the beginning of the alleged invasion of her Fourth Amendment rights. It was the warrantless search and seizure of evidence that was challenged by Friedman, not simply the warrantless entry into her vehicle. It was far more significant that, after entering her vehicle, the officers proceeded to search it and ultimately found and seized incriminating evidence. Had the officers entered her vehicle and found nothing, Friedman would not have been charged and this suppression issue would not be before us.

**{¶21}** Moreover, even if I could agree with the majority that this court should address the reasonableness of this warrantless search and seizure on the merits, I cannot agree to reverse the trial court's suppression order. While I recognize that *Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406, *Illinois v. Caballes* (2005), 543 U.S. 405, and other controlling case law in this area *could* be extended to authorize the warrantless search in this case, I cannot agree that it *should* be extended to the facts of this case.

**{¶22}** Although Justice Ginsberg warned her colleagues in *Caballes*, 543 U.S. at 422 (Ginsberg, J., dissenting), that "[t]oday's decision *** clears the way for suspicionless, dog-accompanied drug sweeps of parked cars along sidewalks and in parking lots[,]" it is clear that *Caballes* did not authorize the random and wide-scale use of drug dogs as a means to create probable cause to search vehicles parked on public streets. *Caballes* involved an occupied vehicle that was subjected to a lawful traffic stop. In a separate opinion, Justice Souter emphasized that he did not agree with the decision of the majority due to the fallibility of drug dogs and further stated that although he shared Justice Ginsberg's concerns about the implications of the majority's holding, he did not believe that the decision had authorized the wide scale use of drug dogs to justify searching parked vehicles. Id. at 417 (Souter, J., dissenting). In fact, the language of the majority opinion is explicitly limited to dog sniffs by trained narcotics dogs during lawful traffic stops that reveal no information other than the location of an illegal substance. Id. at 409.

**{¶23}** The facts of *Caballes* and most of the case law in this area have involved a search following a dog alert during a lawful traffic stop and the Fourth Amendment reasonably supported the end result: the use of a drug dog to sniff a lawfully stopped vehicle has been effective in detecting a drug trafficker who was in the process of using a vehicle to transport

drugs on one of our nation's highways. The minimal intrusion of the drug dog, and the resulting search after it alerted, was justified because it enabled the police to protect the public from a drug trafficker and a sizable quantity of drugs that could be lost if the police were required to wait for a warrant.

{¶24} There is no similar rationale for extending that body of case law to the facts of this case, which are in sharp contrast to any of the cases cited by the majority. Unlike the settings of any prior precedent on this issue, the police officers in this case had not lawfully stopped Friedman's vehicle, nor had they encountered her vehicle at the scene of a criminal investigation. Consequently, there was no need for them to act quickly in the heat of an ongoing investigation to protect the safety of themselves or others or to prevent the destruction of evidence or flight of a suspect. Without any suspicion that any vehicle parked on the street was involved in criminal activity, even a traffic or parking violation, police officers paraded a drug dog up and down the street,[1] attempting to create probable cause to search some of them. They deliberately targeted parked vehicles because an assistant prosecutor had advised them that if the trained drug dog alerted after sniffing the exterior of a vehicle, they had probable cause to enter and search without a warrant. The warrantless search in this case appears to have been done simply for the convenience of law enforcement.

{¶25} I fear that these circumstances may be perceived as a matter of the ends justifying the means. Subjecting parked, locked, and unoccupied vehicles to suspicionless drug dog sweeps, in an effort to create probable cause to search them, does not better serve the public, but instead threatens the privacy of anyone who parks a vehicle on public property, if the drug-dog falsely alerts. The fact that, in this case, a minor misdemeanant was apprehended does not

---

[1] It is unclear from the record whether Friedman's vehicle was parked on Ohio State University property or on a public street in the city of Wooster.

justify the intrusion.  In some situations, the dog will falsely alert, and an innocent vehicle owner will have the entire contents of her vehicle rifled through by the police, outside her presence. Moreover, she will not likely have any recourse for the unnecessary invasion into her privacy, for no criminal case against her will result.  I would overrule the state's assignment of error and affirm the trial court's decision granting Friedman's motion to suppress.