[Cite as *State v. Travick*, 2023-Ohio-460.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 111662 |
| v. | : | |
| KEVIN B. TRAVICK, JR., | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** February 16, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-663446-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Lisa J. Turoso and Anthony T. Miranda, Assistant Prosecuting Attorneys, *for appellant*.

James R. Willis, *for appellee*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant, state of Ohio ("the state"), appeals an order granting a motion to suppress filed by defendant-appellee, Kevin Travick, Jr. ("Travick"). The state claims the following error:

The trial court erred in granting defendant's motion to suppress.

{¶ 2} We reverse the trial court's judgment and remand the case to the trial court for further proceedings.

## I. Facts and Procedural History

{¶ 3} Travick was charged with carrying a concealed weapon, having weapons while under disability, and improperly handling firearms in a motor vehicle. Following his indictment, Travick filed a motion to suppress evidence of the firearm seized by police during a traffic stop. At a hearing on the motion, Officer Colton Cramer ("Officer Cramer") of the Garfield Heights Police Department testified that on September 19, 2021, he was patrolling the area of Turney Town Plaza at approximately 2:39 a.m. when he observed a "white SUV travel at a very high rate of speed out of the parking lot." (Tr. 13-14.) He followed the vehicle as it traveled "45 miles per hour" in an area where the speed limit fluctuated between 25 and 35 miles per hour. (Tr. 15.)

{¶ 4} Officer Cramer observed the vehicle make "a very, very wide right turn," which "crossed over the center lanes." (Tr. 16.) He also observed that the driver did not activate the turn signal when making the turn. (Tr. 16.) Eventually, the SUV turned into a residential driveway on Russell Avenue, and Officer Cramer activated his lights and siren just before the vehicle turned into the driveway. The driver exited the vehicle, ran to the side door of the house, and attempted to get inside the house, but the door was locked. (Tr. 17.)

{¶ 5} Officer Cramer and his partner "grabbed" the driver, who was later identified as Travick, and escorted him to the patrol car, which was parked in the

street. (Tr. 18.) Almost immediately following the stop, a woman exited the house and asked what was going on. (Tr. 18.) Officer Cramer explained "what was going on" and asked the woman to step aside momentarily, but she continually stated that she needed to "grab something from the vehicle." (Tr. 18.) Officer Cramer repeatedly asked the woman to "just step away" and "wait until [they were] done." (Tr. 18.)

{¶ 6} According to Officer Cramer, the woman opened the front driver's side door and tried to enter the vehicle. (Tr. 19.) Officer Cramer approached the car and observed an open bottle of Patrón in the backseat. He explained:

> At that point, you know, when I was up there by the vehicle with her, I could see that there was an open bottle of Patrón in the backseat behind the driver's seat, rear seat. Several flakes of marijuana all over the center console.

> At that point, you know, I went and grabbed the Patrón. Made sure there was no other signs of open containers inside the vehicle tucked under the seat within reach. Investigate[d] the flakes of marijuana. And then while I was leaning inside the vehicle, I observed a handle of a handgun between the driver's seat and the center console.

(Tr. 19.) He did not explain whether he saw the bottle of Patrón through the open door or whether he saw it through the windows, which were dark and tinted. In any case, the body-camera video shows Officer Cramer shining his flashlight into the car.

{¶ 7} On direct examination, Officer Cramer further testified:

Q: At what point did you actually see the alcohol in the vehicle?

A: I believe it was when I — after talking to the female, when I had her walk back, I asked what was the male's name. When I was standing there by the window, I was looking inside the vehicle. I could see the open container right there.

(Tr. 24.)

{¶ 8} On cross-examination, Officer Cramer stated that Travick was secured in the patrol car before he went back and looked in the white SUV. (Tr. 35.) When asked what he found in the car that was illegal, Officer Cramer replied that he found "flakes of raw marijuana scattered across the center console" and "an open bottle of Patrón." Officer Cramer explained that he searched the car to determine if the bottle of Patrón contained alcohol. (Tr. 43.) While he was investigating the Patrón, he discovered the handgun between the driver's seat and the center console.

{¶ 9} Based on the evidence presented at the hearing, the trial court granted the motion to suppress. In reaching this decision, the court explained on the record:

> Based on the evidence presented and specifically on the body camera, it appeared that Mr. Travick was detained. I don't know if he was under arrest at the time, but he clearly wasn't free to leave the presence of the officers, and certainly was not in grabbing distance of anything in the vehicle.
>
> But my issue is with the plain view doctrine. Those windows were so tinted that unless the officer was shining a flashlight through those windows trying to observe anything in the vehicle, nothing in that vehicle in my estimation could be in plain view.

(Tr. 56.) The state now appeals the trial court's judgment pursuant to Crim.R. 12(K).

## II. Law and Analysis

{¶ 10} In the sole assignment of error, the state argues the trial court erred in granting Travick's motion to dismiss.

## A. Standard of Review

{¶ 11} This court reviews a decision on a suppression motion under a mixed standard of review. "In a motion to suppress, the trial court assumes the role of trier

of fact and is in the best position to resolve questions of fact and evaluate witness credibility." *State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994). Therefore, a reviewing court must accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Accepting the facts as true, the reviewing court must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. *Id.* An appellate court reviews the trial court's application of the law to its factual findings under a de novo standard. *State v. Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100.

## B. The Search

{¶ 12} The Fourth Amendment of the U.S. Constitution, which is enforceable against the states through the Due Process Clause of the Fourteenth Amendment, provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Article I, Section 14 of the Ohio Constitution has language almost identical to the Fourth Amendment and affords the same protections against unreasonable searches and seizures. *State v. Robinette*, 80 Ohio St.3d 234, 245, 685 N.E.2d 762 (1997).

{¶ 13} There are, however, exceptions to the Fourth Amendment's warrant requirement. Although stopping an automobile and detaining its occupants

constitutes a "seizure" under the Fourth Amendment, "a traffic stop is constitutionally valid if an officer has a reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). *See also Dayton v. Erickson*, 76 Ohio St.3d 3, 11, 665 N.E.2d 1091 (1996) ("Where an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *.").

{¶ 14} It is undisputed that the Garfield Heights police had probable cause to initiate a traffic stop. Officer Cramer testified that Travick's vehicle was speeding, crossed the center lane, and failed to use a turn signal. (Tr. 13-16.) Each traffic infraction justified the stop. Therefore, the traffic stop was legal, and the sole issue here is whether the search was constitutional.

## 1. Plain View

{¶ 15} The state argues the trial court erred in concluding that the plain-view exception to the warrant requirement was inapplicable because Officer Cramer used a flashlight to see inside the vehicle. The state contends the use of flashlights to see inside a dark car is legal and does not preclude application of the plain-view doctrine.

{¶ 16} The plain-view doctrine holds that "objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence." *Harris v. United States*, 390 U.S. 234, 236, 88

S.Ct. 992, 19 L.Ed.2d 1067 (1968). Under the plain-view doctrine, "an officer may seize an object in plain view without a warrant if (1) the police are not violating the Fourth Amendment in arriving in the place where the evidence was found; (2) the incriminating character of the evidence is immediately apparent; and (3) the police have a lawful right to access the object itself." *State v. Halczyszak*, 25 Ohio St.3d 301, 303, 496 N.E.2d 925 (1986); *Horton v. California*, 496 U.S. 128, 136-137, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

{¶ 17} The United States Supreme Court and this court have held that an officer's use of a flashlight to see contraband does not preclude application of the plain-view doctrine. *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); *State v. Thurman*, 8th Dist. Cuyahoga No. 78230, 2001 Ohio App. LEXIS 4767 (Oct. 25, 2001).

{¶ 18} In *Thurman*, a police officer approached an occupied vehicle and suspected the occupants were illegally drinking alcohol. The officer "shined a flashlight into the interior" of the car where he observed the butt of a firearm protruding between the driver's leg and the center console. *Id.* at 2. The officer and his partner placed the occupants under arrest. During an inventory search of the vehicle, the officers found crack cocaine in the glove compartment.

{¶ 19} Thurman filed a motion to suppress, challenging the propriety of the police search that led to his arrest. The motion was denied. On appeal, this court held that the search was valid because the officer observed the gun in plain view. *Id.* at 7. Moreover, we held that "[t]he use of a flashlight during the evening hours does

not change our analysis of whether the firearm was in plain view." *Id.*, citing *State v. Lang*, 117 Ohio App.3d 29, 689 N.E.2d 994 (1st Dist.1996). *See also Cleveland v. Ogletree*, 8th Dist. Cuyahoga No. 36045, 1977 Ohio App. LEXIS 7557 (Apr. 28, 1977) (police seizure of gun in plain view was valid because "the police officer had the right to flash his light into the defendant's car").

{¶ 20} Therefore, Officer Cramer's use of a flashlight was permissible and did not preclude application of the plain-view doctrine. The evidence showed that Officer Cramer could see the open bottle of Patrón from outside the vehicle, albeit with the help of the flashlight. And since the car was legally stopped for a traffic violation, Officer Cramer did not violate the Fourth Amendment in arriving at the place where the evidence was found. The trial court's decision on the plain-view doctrine is, therefore, contrary to law.

### 2. Automobile Exception

{¶ 21} Although the trial court granted the motion to suppress based on an erroneous application of the plain-view doctrine, Travick argued in the trial court that the search of his car was illegal pursuant to *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), and *State v. Clay*, 8th Dist. Cuyahoga No. 91942, 2009-Ohio-2725. The state, on the other hand, argued that the search was legal pursuant to the automobile exception to the warrant requirement.

{¶ 22} In *Arizona v. Gant*, the United States Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the

search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351. Here, it is undisputed that the first rationale in *Gant* is not met because Travick was secured in the police vehicle at the time of the search. And because Travick was not under arrest prior to the search, the second rationale in *Gant* is also inapplicable.

{¶ 23} In *State v. Clay*, 8th Dist. Cuyahoga No. 91942, 2009-Ohio-2725, this court held that "'police may not seize a defendant's car and conduct an inventory search following a defendant's arrest where it was legally parked and no public concern existed which required the removal of the car from its legally parked place.'" *Id.*, quoting *State v. Ross*, 8th Dist. Cuyahoga No. 62215, 1993 Ohio App. LEXIS 2622 (May 20, 1993), citing *State v. Collura*, 72 Ohio App.3d 364, 594 N.E.2d 975 (8th Dist.1991). We find *Clay* equally inapplicable because Travick was not under arrest at the time of the search. The state did not search Travick's car incident to arrest. Therefore, neither *Gant* nor *Clay* are applicable here.

{¶ 24} Moreover, the state argued that Officer Cramer conducted the search pursuant to the automobile exception to the warrant requirement. The automobile exception to the warrant requirement allows an officer to search a vehicle when there is probable cause to believe it contains contraband. *State v. Young*, 8th Dist. Cuyahoga No. 106211, 2018-Ohio-3047, ¶ 13, citing *State v. Moore*, 90 Ohio St.3d 47, 52, 734 N.E.2d 804 (2000). The rationale behind the automobile exception is two-fold (1) vehicles are mobile, and (2) there exists a lesser expectation of privacy

in a vehicle. *California v. Carney*, 471 U.S. 386, 391, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).

{¶ 25} In *State v. Mason-Gaul*, 11th Dist. Ashtabula No. 2003-A-0109, 2005-Ohio-1561, two police officers approached a woman sitting in a parked car and noticed an open can of beer on the floor of the car, in violation of R.C. 4301.62(B)(4). Upon removing the beer can from the car, one of the officers noticed loose marijuana on the floor of the car. The officer then searched the vehicle and defendant's purse, where he found partially smoked marijuana cigarettes, baggies of marijuana, and a glass pipe. The appellate court held that the discovery and removal of the beer can was reasonable under the "plain-view" doctrine to the Fourth Amendment. The court further held that, under the automobile exception to the warrant requirement, the discovery of marijuana constituted probable cause to search the remainder of the vehicle, including the defendant's purse, where additional marijuana could be concealed. The appellate court, therefore, affirmed the denial of the defendant's motion to suppress.

{¶ 26} As in *Mason-Gaul*, Officer Cramer observed an open bottle of Patrón and loose marijuana in the car Travick was driving, in violation of R.C. 4301.62(B)(4) and 2925.11, which prohibits the possession of marijuana. Thus, Officer Cramer's observation of these prohibited items gave rise to probable cause to search the vehicle under the automobile exception. During the search, Officer Cramer discovered a handgun. Pursuant to the automobile exception, the discovery

of the handgun was lawful. Therefore, the trial court erred in granting Travick's motion to suppress.

{¶ 27} The sole assignment of error is sustained.

{¶ 28} Judgment is reversed and case remanded.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN T. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, P.J., and
SEAN C. GALLAGHER, J., CONCUR