[Cite as *State v. Mathis*, 2024-Ohio-5707.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | Nos. 113678 and 113862 |
| v. | : | |
| RASHEED MATHIS, | : | |
| Defendant-Appellee. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED
**RELEASED AND JOURNALIZED:** December 5, 2024

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-678251-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Frank Romeo Zeleznikar and Erica
Sammon, Assistant Prosecuting Attorneys, *for appellant*.

Cullen Sweeney, Cuyahoga County Public Defender, and
Thomas T. Lampman, Assistant Public Defender, *for
appellee*.

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from the trial court's

judgment granting defendant-appellee Rasheed Mathis's motion to suppress and

dismissing the case. We reverse the trial court's dismissal of the case, affirm its grant of the motion to suppress, and remand for further proceedings consistent with this decision.

## I. Background

{¶ 2} A Cuyahoga County Grand Jury indicted Mathis in a three-count indictment with having weapons while under disability in violation of R.C. 2923.13(A)(3), carrying a concealed weapon in violation of R.C. 2923.12(A)(2), and improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B). The charges arose after Euclid police stopped and searched Mathis's vehicle on January 28, 2023.

{¶ 3} At the hearing on Mathis's motion to suppress, Euclid police officer Brandon Moore testified on direct examination that he works in the City of Euclid's Community Response Unit. Moore said that because the Unit is tasked with getting guns and drugs off the street, police officers in the Unit make "proactive traffic stops" that they think will lead to the recovery of guns and drugs.

{¶ 4} Joint exhibit No. 1, footage from Moore's body camera that was played during the hearing, reflects that Moore drove behind Mathis for a short while and after Mathis pulled into a parking space in the apartment complex where he lived, three police cruisers, including Moore's, surrounded Mathis's vehicle. One officer used a vehicular public address system to order Mathis to lower all the windows in his vehicle.

{¶ 5} On cross-examination, Moore testified that when he stopped Mathis on January 28, 2023, he was aware that an armed robbery in Euclid had occurred two days earlier. The police report associated with that robbery stated that the robbery had occurred at 11:28 a.m. on January 26, 2023, and "four suspects fled the area in a gold or tan in color Dodge or Chrysler minivan after stealing a dishwasher. Officers were told the plate started possibly with TWL." Moore initially testified that before he stopped Mathis, he did not have a physical description of the suspects but was aware of the color of the van involved in the robbery and knew that the license plate began with TWL. Later, on cross-examination, Moore equivocated and said he did not know that the suspected vehicle was gold or tan, although he also testified that "the witness saw a tan car."

{¶ 6} Moore testified that he decided to stop Mathis because of the illegally dark window tint on his van. However, footage from Moore's body camera reflects that after stopping Mathis and upon getting out of his cruiser, Moore radioed dispatch and stated that he was investigating a suspect in an armed robbery. Moore made no mention to dispatch of any alleged window-tint violation.

{¶ 7} Moore's body camera footage reflects that when he approached the driver's side window of Mathis's vehicle, Mathis asked, "What'd I do?" and Moore responded, "Not gonna lie, your vehicle matches the description of a suspect vehicle used in an armed robbery." Moore made no mention of any window-tint violation to Mathis and told him, "I'm just gonna grab some information from you and hopefully send you on your way." Moore then asked Mathis if there were any

weapons in the vehicle, which Mathis denied; Mathis also denied smoking marijuana that day after Moore told him that he smelled marijuana in the vehicle. Moore asked Mathis for his identification, which Mathis gave to him. Mathis said, "A robbery?" and Moore said, "It's probably nothing," and walked back to his cruiser.

{¶ 8} Moore's partner, who was standing next to the driver's side of the vehicle, then told Mathis, "We're just talking to you because the vehicle matches the description of a robbery vehicle and there's not a lot of this particular type of van rolling around. You might not be involved."

{¶ 9} When Moore returned to Mathis's car, he asked him to step out of his vehicle. When Moore's partner advised that he had observed marijuana roaches in the ashtray of Mathis's vehicle, Moore frisked Mathis and found a firearm in his pocket. The police handcuffed Mathis, and Moore put him in the backseat of his cruiser.

{¶ 10} Moore admitted on cross-examination that as he approached Mathis's van before he spoke with him, he observed that Mathis was driving a light blue van with a license plate number of JWL635 and that he was aware before he interacted with Mathis that the vehicle did not match the description of the van used in the robbery. He also agreed that, as reflected on the body camera footage, in at least the first five minutes of the police interaction with Mathis, neither he nor any other officer on the scene said anything to Mathis about a window-tint violation. In fact, Moore's body camera footage reflects that Moore did not mention the alleged

window-tint violation until the seven-minute mark of the footage, after Mathis had been arrested and as he was being placed in the backseat of Moore's cruiser, when Mathis told Moore that he still did not understand why he had been stopped. The footage reflects that the police searched Mathis's vehicle after the arrest and that Moore did not measure Mathis's windows for illegal window-tint until approximately the 15-minute mark of the body camera footage, well after Mathis had been arrested and placed in Moore's cruiser.

{¶ 11} Moore agreed that he and the other officers muted their body cameras for a short time at approximately the twelve minute mark in the footage but said he did not know the reason why.

{¶ 12} In its closing argument, the State argued that as long as the police have probable cause to believe a traffic violation has occurred, the stop is constitutionally valid, even if the officer has an ulterior motive for stopping the vehicle. The State argued that Moore's stop of Mathis was therefore valid in that the police stopped Mathis because of the illegal window tint on his van, even if they also wanted to investigate whether he was involved in the earlier robbery.

{¶ 13} Defense counsel argued that this was not a pretextual traffic stop, as argued by the State, and that the sole reason for the stop was because the police suspected that Mathis was involved in the armed robbery that had occurred two days earlier. Counsel argued that the stop should have ended as soon as the justification for the stop ended, i.e., the police should have terminated the encounter when Moore became aware that the vehicle color and license plate of Mathis's van did not

match the van used in the robbery, because, at that point, they could not have reasonably suspected that Mathis was involved in the robbery.

{¶ 14} At the conclusion of the hearing, the trial judge said that she would render a decision after the hearing but that it was "pretty clear from the testimony that he was not stopped for a tinted window. The question is whether or not how long he could have been stopped for suspicion of the robbery." The court subsequently issued a journal entry granting the motion to suppress. The State then filed a motion asking the court to issue findings of fact and conclusions of law pursuant to Crim.R. 12(F).

{¶ 15} Before the trial court ruled on the State's motion, the State filed an appeal of the trial court's ruling granting the motion to suppress. It then filed a motion asking this court to order the trial court to issue the findings required by Crim.R. 12(F). This court granted the State's motion and remanded the case to the trial court, stating in its journal entry that "[t]he appeal is remanded for the trial court to rule on the state's pending request for findings of fact and conclusions of law regarding the court's granting [of] the motion to suppress." The journal entry further stated that "Crim.R. 12(F) requires a court to making findings of fact '[w]here factual issues are involved in determining a motion.'"

{¶ 16} Upon remand, the trial court held a hearing on the record. It denied the State's motion for findings of fact and conclusions of law, ruling that Crim.R. 12(F) requires the trial court to list its "essential findings" but does not require it to

issue findings of fact and conclusions of law.  The trial court then stated its findings on the record.

{¶ 17}  The trial court said that it granted the motion to suppress because the stop in this case "wasn't about tinted windows.  It was about this looked like a vehicle that was involved in a robbery."  The trial court found that "[o]nce the police officer determined that this was not a vehicle or individual that was involved in the robbery, then at that point in time their inquiry should have stopped, but it did not."  The court stated that although the police told Mathis after his arrest when he was in the police cruiser that he was stopped because his windows were tinted, "certainly that was not the reason for the stop."

{¶ 18}  The trial court's subsequent journal entry denied the State's motion for findings of fact and conclusions of law and stated that "pursuant to Crim.R. 12(F), the court stated its essential findings on the record and reaffirmed its February 22, 2024 decision granting defendant's motion to suppress."  The journal entry also ordered "case is dismissed."

{¶ 19}  The State then filed an appeal from the trial court's judgment dismissing the case.  The State's appeals were consolidated for briefing, hearing, and disposition.

## II.  Law and Analysis

### A.  The trial court's dismissal of the case

{¶ 20}  In its first assignment of error, the State contends that the trial court did not have jurisdiction to dismiss the case because the matter was before the trial

court on a limited remand to rule on the State's motion for findings of fact and conclusions of law. We agree.

{¶ 21} A trial court lacks jurisdiction to exceed the scope of an appellate court's remand, and actions beyond the scope are void. *Grissom v. Ohio Dept. of Job & Family Servs.*, 2020-Ohio-1608, ¶ 11 (8th Dist.), citing *State v. Teagarden*, 2015-Ohio-2563, ¶ 24 (5th Dist.), and *State v. Carsey*, 2014-Ohio-3682, ¶ 11 (4th Dist.).

{¶ 22} This court's limited remand directed the trial court to rule on the State's motion for findings of fact and conclusions of law pursuant to Crim.R. 12(F). Any action by the trial court beyond that limited remand would exceed the scope of the remand. Accordingly, the trial court had no jurisdiction to dismiss the case, and the dismissal is therefore void. The first assignment of error is sustained.

## B. The trial court's grant of the motion to suppress

{¶ 23} In its second assignment of error, the State contends that the trial court erred in granting Mathis's motion to suppress.

{¶ 24} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The trial court assumes the role of the trier of fact when presented with a motion to suppress and is in the best position to analyze the evidence and evaluate the credibility of the witnesses. *Id.* Accordingly, an appellate court must defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* However, an appellate court must independently determine as a matter of law, without deference to the

trial court's conclusion, whether the facts meet the applicable legal standard. *State v. Hill*, 2005-Ohio-3155, ¶ 12 (8th Dist.).

{¶ 25} The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure." The basic purpose of this Amendment "'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officers.'" *State v. Hicks*, 2023-Ohio-4126, ¶ 34, quoting *Carpenter v. United States*, 585 U.S. 296, 303 (2018). Accordingly, warrantless searches and seizures are per se unreasonable unless an exception to the warrant requirement applies. *Katz v. United States*, 389 U.S. 347, 357 (1967).

{¶ 26} An investigative stop, or "*Terry* stop," is a common exception to the Fourth Amendment warrant requirement. *See Terry v. Ohio*, 392 U.S. 1 (1968). A law enforcement officer may properly stop an individual under the *Terry*-stop exception if the officer possesses the requisite suspicion based on specific and articulable facts that the person is, was, or is about to be engaged in criminal activity. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "Limited in both duration and purpose, the *Terry* stop may last only as long as it reasonably takes a police officer to confirm or dispel suspicion of criminal activity." *State v. Hall*, 2016-Ohio-783, ¶ 17 (1st Dist.), citing *Terry* at 30. *See also Florida v. Royer*, 460 U.S. 491, 500 (1983) (If the police initiate a lawful *Terry* stop, they must be careful not to exceed the scope of the stop's underlying justification, and the length of the stop cannot last longer than is necessary to effectuate the purpose of the stop.).

{¶ 27} The State contends that the trial court granted the motion to suppress "on an improper legal analysis"; specifically, that it "improperly focused on the officer's subjective purpose of the stop, rather than whether there was reasonable, articulable suspicion or probable cause to initiate the stop." (Appellant's brief, p. 12.) The State contends that Moore had a reasonable suspicion to stop Mathis because he testified that he saw Mathis operating a vehicle with suspected illegal window tint. It argues that the stop was therefore valid, even if the police also wanted to investigate Mathis as a suspect in the earlier robbery, because, as the Ohio Supreme Court held in *Dayton v. Erickson*, 76 Ohio St.3d 3, 11 (1996),

> where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution, even if the officer had some ulterior motive for making the stop, such as whether the violator was engaging in more nefarious criminal activity.

The State contends that because it is undisputed that the windows on Mathis's vehicle were illegally tinted, Moore had probable cause to stop him for that traffic violation, and therefore, the trial court's focus on determining why Moore actually stopped Mathis was error.

{¶ 28} The State's argument misses the mark. In considering a motion to suppress, the trial court is the factfinder and must evaluate the credibility of the witnesses and resolve factual questions. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Here, in doing so, the trial court found that Moore's testimony that he stopped Mathis for a window-tint violation was not credible and that, in fact, the

police stopped Mathis to investigate him as a possible suspect in the earlier armed robbery. The trial court's determination of the factual basis for the stop was within its authority when ruling on a motion to suppress. Accepting the State's argument that the court was required to believe Moore's testimony that he stopped Mathis for a window-tint violation simply because that was the reason Moore gave as the reason for the stop would eviscerate the trial court's role as the finder of fact.

{¶ 29} Furthermore, contrary to the State's argument, the trial court did not find that the stop itself was illegal. Rather, it found that the police improperly extended the duration of the stop because the stop should have ended when Moore determined that the color of Mathis's vehicle and his license plate number did not match the vehicle used in the earlier robbery, which Moore knew well before the police frisked Mathis, discovered a firearm on his person, and arrested him.

{¶ 30} We find that the trial court's determination of the facts — that Moore did not stop Mathis for a window-tint violation but rather to investigate him as a suspect in the earlier robbery — is supported by competent, credible evidence. As demonstrated by the footage from Moore's body camera, Moore made no mention whatsoever of any window-tint violation when he first approached Mathis and told him why the police had stopped him. Moore's partner also told Mathis the police were investigating him as a suspect in the robbery. Significantly, Moore never mentioned anything about a window-tint violation until he was putting Mathis in the backseat of his cruiser after he had been arrested. We are also troubled by Moore's muting of his body camera for a short time during the encounter with

Mathis and his assertion at the suppression hearing that he does not know why the camera was muted.

{¶ 31} Accepting the trial court's factual determination as true, we must then determine whether the facts meet the applicable legal standard. Under *Terry*'s framework, an investigative stop must be both justified at its inception due to reasonable suspicion of criminal activity and reasonably related in scope to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 20. Thus, "a vehicle stop is limited in scope and degree of intrusion by its purpose and may last no longer than reasonably necessary to effectuate the purpose of the stop." *State v. Rogers*, 2022-Ohio-4535, ¶ 22 (1st Dist.), citing *State v. Rodriguez*, 575 U.S. 348, 354 (2015), and *United States v. Sharpe*, 470 U.S. 675 (1985).

{¶ 32} The purpose of the stop in this case was to determine if Mathis's vehicle was involved in the earlier robbery. Moore admitted that when he walked up to Mathis's van he knew that the color of the van and the license plate number did not match that of the suspected vehicle in the robbery. Accordingly, at that point the police no longer had a reasonable suspicion that Mathis was involved in the robbery and should have sent him on his way. *See State v. Shelton*, 2011-Ohio-4408 (8th Dist.) (where officer stopped defendant because his license plate was partially obscured by snow in violation of R.C. 4503.21(A) but was able to read the license plate when he approached the defendant's car, officer lacked reasonable suspicion of any violation and defendant "should have been free to continue on his way without any further detention or investigation").

{¶ 33} Because the police improperly extended the stop even after they no longer had a reasonable suspicion to detain Mathis, the search violated the Fourth Amendment. Evidence derived from a search or seizure that violates the Fourth Amendment is subject to exclusion at trial. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). Accordingly, the trial court properly granted the motion to suppress. The second assignment of error is overruled.

{¶ 34} Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

It is ordered that appellee and appellant split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MARY J. BOYLE, J., and
ANITA LASTER MAYS, J., CONCUR