[Cite as *State v. Robinson*, 2025-Ohio-5413.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                :

    Plaintiff-Appellee,                :

                                                 No. 114912

    v.                                           :

JAMES ROBINSON,                          :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 4, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-694640-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Dominic Neville, Assistant Prosecuting
Attorney, *for appellee.*

AJLJ Law Firm and Ashley L. Jones; P. Shipman Law,
LLC and Philip Shipman, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant James Robinson ("Robinson") appeals the trial court's denial of his motion to suppress. For the reasons that follow, we affirm.

{¶ 2} Robinson was charged in a three-count indictment with having weapons while under disability, in violation of R.C. 2923.13(A)(2), a felony of the third degree; carrying a concealed weapon, in violation of R.C. 2923.12(A)(2), a felony of the fourth degree; and improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16(B), also a felony of the fourth degree. Defense counsel filed a motion to suppress, and the trial court held a hearing on the motion. The following evidence was presented at the hearing.

{¶ 3} On April 12, 2024, agents from the Ohio Investigative Unit of the Department of Public Safety were conducting surveillance at a Marathon gas station on Broadway Avenue in Cleveland, Ohio. Kevin Cesaratto, an assistant agent-in-charge, testified that he has the authority and jurisdiction throughout the state to investigate liquor laws violations and criminal offenses. Agent Cesaratto testified that he has worked with the department for nearly ten years and was trained in firearm detection, including how to identify a concealed firearm through a process called "printing." Printing occurs when the shape and weight of a firearm create an outline through a person's clothing.

{¶ 4} The agents work in plain clothes and have tactical gear similar to how Cleveland police vice and gang units are outfitted. The agents drive unmarked vehicles with lights and sirens and have the authority to announce themselves as police officers. Agent Cesaratto explained that his unit uses binoculars during surveillance and that he has personally made over a thousand arrests based on printing.

{¶ 5} Agent Cesaratto testified that his unit was conducting surveillance at the subject gas station on April 12, 2024. The agent testified that the gas station holds a liquor permit and there was signage at the location prohibiting firearms. He further testified that entering the gas station while armed would constitute the crime of criminal trespass. The State introduced into evidence a photo showing the no-firearm sign posted at the front entrance; the photo was taken a couple weeks after Robinson's arrest. Agent Cesaratto testified, however, that he observed the no-firearms sign the evening of Robinson's arrest.

{¶ 6} According to Agent Cesaratto, two other agents made the initial observation of Robinson and noted he appeared to have a heavy object in his right front pants pocket, consistent with a firearm. Based on this information, Agent Cesaratto positioned himself in front of the gas station door, and, as Robinson exited, the agent observed what appeared to be a firearm in Robinson's right front pocket, with the barrel pointing down. Agent Cesaratto stated that based on his training and experience he was "very certain" the object in Robinson's pocket was a firearm.

{¶ 7} Robinson got into his car and agents initiated a stop. Agent Cesaratto testified that they conducted the stop for investigation of criminal trespass. Robinson exited his vehicle, raised his hands, and left the driver's side door open. Agent Cesaratto did not get out of his car at that time but testified that when the other agents looked in the car, they saw a firearm in plain view between the driver seat and the center console.

{¶ 8} Agents discovered that Robinson was on parole and legally prohibited from possessing a firearm. Agent Cesaratto stated that the underlying conviction that caused the disability was involuntary manslaughter, for which Robinson served a prison term.

{¶ 9} Agent Stephen Cox testified that he is an enforcement agent with the Ohio Investigative Unit and is also assigned to the Northeast Ohio Crime Gun Intelligence Unit. He testified that he has received training on firearm printing, and much of his knowledge is based on on-the-job experience. His testimony was substantially the same as Agent Cesaratto's, except that Agent Cox personally observed the firearm in Robinson's car. The State introduced Agent Cox's body camera video of the incident, which showed a firearm visible between the driver's seat and center console of the vehicle. The body camera also captured the no-firearm sign, Robinson being Mirandized, and Robinson admitting that he was not permitted to possess a firearm.

{¶ 10} The State rested, and the defense rested without presenting any witnesses. The trial court denied the motion to suppress, finding that the agents had a reasonable suspicion to believe that Robinson had engaged in criminal activity by carrying a firearm onto premises where firearms are prohibited and that the encounter, which led to the discovery of a firearm in Robinson's vehicle, did not violate the Fourth Amendment's prohibition against unreasonable searches and seizures.

{¶ 11} Robinson then pled no contest to the indictment. The court found him guilty on all counts and sentenced him to 27 months in prison. The court also ordered forfeiture of the firearm.

{¶ 12} On appeal, Robinson raises one assignment of error, in which he argues that "the trial court committed reversible error [in] denying Mr. Robinson's motion to suppress evidence[.]"

{¶ 13} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 2003-Ohio-5372, ¶ 8. When presented with a motion to suppress, the trial court assumes the role of the trier of fact and is in the best position to analyze the evidence and evaluate the credibility of the witnesses. *Id.* Accordingly, an appellate court must defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* The appellate court, however, must independently determine as a matter of law, without deference to the trial court's conclusion, whether the facts meet the applicable legal standard. *State v. Mathis*, 2024-Ohio-5707, ¶ 24 (8th Dist.), citing *State v. Hill*, 2005-Ohio-3155 (8th Dist.).

{¶ 14} The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure." The basic purpose of this Amendment "'is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officers.'" *State v. Hicks*, 2023-Ohio-4126, ¶ 34, quoting *Carpenter v. United States*, 585 U.S. 296, 303 (2018). Accordingly, warrantless

searches and seizures are per se unreasonable unless an exception to the warrant requirement applies. *Katz v. United States*, 389 U.S. 347, 357 (1967).

{¶ 15} An investigative stop, or "*Terry* stop," is a common exception to the Fourth Amendment warrant requirement. A law enforcement officer may properly stop an individual under the *Terry*-stop exception if the officer possesses the requisite suspicion based on specific and articulable facts that the person is, was, or is about to be engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1 (1968); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). The Fourth Amendment applies to seizures of a person, including brief investigatory stops of persons in a vehicle. *Navarette v. California*, 572 U.S. 393, 396 (2014). When a police officer has a reasonable suspicion that the person being stopped has or is engaged in criminal activity, the *Terry* stop does not violate the Fourth Amendment. *Fairview Park v. Bowman*, 2023-Ohio-4210, ¶ 52 (8th Dist.), citing *State v. Jones*, 2014-Ohio-2763 (8th Dist.).

{¶ 16} Robinson argues that the agents did not have reasonable suspicion to stop and detain him or probable cause to arrest him.

{¶ 17} "Reasonable suspicion is defined as something more than a mere hunch, yet less than the level of certainty required for probable cause." *Solon v. Moore*, 2025-Ohio-2446, ¶ 38 (8th Dist.). "To justify a particular intrusion, 'the police officer must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Parma v. Coyne*, 2024-Ohio-3192, ¶ 19 (8th Dist.), citing *Terry* at 27.

This court has long held that officers can obtain reasonable suspicion that someone has a firearm even when the firearm is concealed. *See State v. Chambers*, 1977 Ohio App. LEXIS 7197, *3 (8th Dist. Jan. 13, 1977) (holding that the stop was legal when officers observed a bulge beneath appellant's thin, unlined, blue windbreaker); *State v. Travis*, 2013-Ohio-581, ¶ 13 (8th Dist.) (holding that the scope of the traffic stop expanded when officers observed the outline of a handgun in appellant's jeans).

{¶ 18} The gas station had a posted sign prohibiting the carrying of firearms on its premises. When Robinson entered the gas station agents observed what appeared to be a firearm in Robinson's right front pants pocket. Agent Cesaratto, who was trained in firearm detection, including how to identify a concealed firearm through "printing," testified that as Robinson exited the store, he personally confirmed what appeared to be a firearm in Robinson's right front pocket. Based on this, the agents had reasonable suspicion that Robinson was carrying a firearm to justify stopping him.

{¶ 19} Robinson argues that the warrantless search of his car and seizure of the firearm do not fall under the plain-view exception to the Fourth Amendment.

{¶ 20} The plain-view doctrine holds that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. *Harris v. United States*, 390 U.S. 234, 236 (1968). Under the plain-view doctrine, an officer may seize an object in plain view without a warrant if (1) the police are not violating the Fourth Amendment in arriving in the place where the evidence was found; (2) the incriminating character

of the evidence is immediately apparent; and (3) the police have a lawful right to access the object itself. *State v. Travick*, 2023-Ohio-460, ¶ 16 (8th Dist.).

{¶ 21} We already have determined that the agents had reasonable suspicion to stop Robinson. Agent Cox testified that he observed the firearm through the open driver's side door inside Robinson's vehicle between the driver's seat and the console. Additionally, the body-camera video entered into evidence showed the firearm in plain view.

{¶ 22} Moreover, the agents had the lawful right to access the firearm under the automobile exception to the Fourth Amendment. The automobile exception allows law enforcement to search a validly stopped vehicle when law enforcement has probable cause that indicates the vehicle contains contraband or evidence of a crime. *State v. Moore*, 90 Ohio St.3d 47, 51 (2000). Here, based on the observation that Robinson was armed when he entered and exited a store that prohibited the carrying of firearms and immediately got into his vehicle after exiting the store, the agents had probable cause to believe that Robinson's vehicle contained a firearm.

{¶ 23} Finally, the agents had probable cause to arrest Robinson. Probable cause to arrest is a requirement of the Fourth Amendment. *State v. Hopper*, 2009-Ohio-2711, ¶ 30 (8th Dist.). A warrantless arrest based upon probable cause does not violate the Fourth Amendment. *State v. Brown*, 2007-Ohio-4837, ¶ 66, citing *United States v. Watson*, 423 U.S. 411, 417 (1976). Probable cause exists where the facts and circumstances within the arresting officer's knowledge, and of which the officer had reasonably trustworthy information, are sufficient in themselves to

warrant a prudent person in believing that an offense has been or is being committed. *State v. Doss*, 2020-Ohio-5510, ¶ 14 (8th Dist.), citing *Cleveland v. Jones*, 2019-Ohio-1525, ¶ 26 (8th Dist.). Here, the record demonstrates that the agents possessed probable cause to arrest Robinson once they observed him carrying what appeared to be a firearm into a store that prohibited firearms, detained him for a short period, viewed a firearm in plain view in his vehicle, and learned that he was on parole and prohibited from carrying a firearm.

{¶ 24} Accordingly, the trial court did not err in denying Robinson's motion to suppress.

{¶ 25} The sole assignment of error is overruled.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

LISA B. FORBES, P.J., and
EMANUELLA D. GROVES, J., CONCUR