**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Mathis*, Slip Opinion No. 2026-Ohio-2269.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-2269

THE STATE OF OHIO, APPELLANT, *v.* MATHIS, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Mathis*, Slip Opinion No. 2026-Ohio-2269.]**

*Criminal law—A police officer who initiates a traffic stop of a motorist with multiple independent bases for reasonable suspicion that the motorist is committing or had committed a crime need not abandon that traffic stop if the officer's subsequent investigation extinguishes one, but not all, of the bases for his reasonable suspicion—Court of appeals' judgment reversed and cause remanded to trial court.*

(No. 2025-0091—Submitted December 10, 2025—Decided June 18, 2026.)

APPEAL from the Court of Appeals for Cuyahoga County,

Nos. 113678 and 113862, 2024-Ohio-5707.

_____

HAWKINS, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, DETERS, and SHANAHAN, JJ., joined. BRUNNER, J., dissented and would dismiss the appeal as having been improvidently accepted.

**HAWKINS, J.**

{¶ 1} We are asked in this case to determine whether a police officer who initiates a traffic stop of a motorist with multiple independent bases for reasonable suspicion that the motorist is committing or had committed a crime must abandon that traffic stop if the officer's subsequent investigation extinguishes one—but not all—of the bases for his reasonable suspicion. We conclude that the officer need not end his investigation if the traffic stop remains justified by a basis for reasonable suspicion that is independent from the extinguished basis. Accordingly, we reverse the judgment of the Eighth District Court of Appeals, and we remand the matter to the Cuyahoga County Court of Common Pleas for proceedings consistent with this opinion.

## Background

{¶ 2} The Euclid Police Department received a report of an armed robbery, with the suspect's vehicle described as a gold or tan Dodge or Chrysler minivan with a license plate possibly beginning with "TWL."

{¶ 3} Two days after the armed robbery, a Euclid police officer who had been advised of the armed robbery initiated a traffic stop on appellee, Rasheed Mathis, who was driving a light blue Chrysler minivan with the license plate "JWL 5635." The officer later testified that he had originally decided to initiate the stop of the vehicle because its windows appeared to him to be illegally tinted. The officer also testified that as he drove closer to Mathis's vehicle to initiate the traffic stop, he realized that it possibly matched the vehicle described in the armed-robbery report.

{¶ 4} After pulling Mathis's vehicle over, the officer approached it on foot and noticed—before speaking to Mathis—that the paint color and license plate did not exactly match the vehicle described in the armed-robbery report. The officer nevertheless continued the traffic stop, and during the stop, he and his partner

smelled burnt marijuana coming from the vehicle and his partner saw burnt marijuana inside the vehicle. The officers then asked Mathis to step out of the vehicle, frisked him, and discovered that Mathis—a convicted felon—had a loaded firearm in one of his pockets.

{¶ 5} Mathis filed a motion to suppress after he was charged with multiple crimes based on his possession of the firearm. He argued that once the officer realized that Mathis's vehicle did not match the description of the vehicle described in the armed-robbery report, the officer should have ended the traffic stop. The trial court held a suppression hearing, and it subsequently issued a journal entry granting the motion to suppress. It did not, however, state on the record its findings of fact.

{¶ 6} The State filed an appeal in the Eighth District and filed a motion in that court requesting an order directing the trial court to state its findings of fact on the record. The Eighth District granted the State's motion and remanded the case to the trial court.

{¶ 7} At a hearing held after remand, the trial court stated its finding that the traffic stop "wasn't about tinted windows" but was instead performed to investigate the armed robbery. Based on that finding, the trial court concluded that the investigation "should have stopped" as soon as the police officer determined that Mathis's vehicle did not match the vehicle described in the armed-robbery report.

{¶ 8} The State appealed for a second time, and the Eighth District affirmed the trial court's judgment, holding that "the police improperly extended the stop even after they no longer had a reasonable suspicion to detain Mathis." 2024-Ohio-5707, ¶ 33 (8th Dist.). We accepted the State's appeal to review the following proposition of law:

When officers are confronted with evidence of a crime during a valid traffic stop, they are not required to abandon the

investigation of that crime simply because the crime may be unrelated to the initial purpose of the stop.

*See* 2025-Ohio-1090.

**Law and Analysis**

{¶ 9} The Eighth District analyzed the traffic stop under the Fourth Amendment to the United States Constitution. Article I, Section 14 of the Ohio Constitution was not analyzed below, and Mathis has not argued that it affords him greater protection than the Fourth Amendment. Accordingly, we review the traffic stop solely under the Fourth Amendment.

{¶ 10} The Fourth Amendment guarantees the right of the people to be free from unreasonable searches and seizures. An investigatory traffic stop by a law-enforcement officer is a "seizure" of the vehicle's occupants and must therefore "be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014), citing *Brendlin v. California*, 551 U.S. 249, 255-259 (2007). In determining whether a traffic stop was lawful, we ask whether the officer had reasonable suspicion that the motorist had committed or was committing a criminal violation, including a traffic violation, *State v. Mays*, 2008-Ohio-4539, ¶ 7, citing *Delaware v. Prouse*, 440 U.S. 648, 663 (1979), and *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). An officer has reasonable suspicion to conduct a traffic stop when the officer has "'a particularized and objective basis for suspecting'" that a motorist has violated the law, *Navarette v. California*, 572 U.S. 393, 396 (2014), quoting *United States v. Cortez*, 449 U.S. 411, 417-418 (1981).

{¶ 11} Determining whether a traffic stop was reasonable under the Fourth Amendment involves an objective inquiry. *See Heien* at 66. This means that we do not consider "the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 813 (1996). When determining whether a traffic stop is reasonable, we do not consider whether "the officer had some ulterior motive

4

for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity," *Dayton v. Erickson*, 1996-Ohio-431, syllabus. We ask instead "whether 'the circumstances, viewed objectively, justify [the challenged] action.'" (Bracketed text in original.) *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011), quoting *Scott v. United States*, 436 U.S. 128, 138 (1978); *see also Erickson* at ¶ 8 (whether a traffic stop is lawful depends on the facts and circumstances known to the officer at the time of the stop, "not upon the officer's actual (subjective) state of mind"); *Florida v. Jardines*, 569 U.S. 1, 10 (2013) ("a stop or search that is *objectively reasonable* is not vitiated by the fact that the officer's real reason for making the stop or search has nothing to do with the validating reason" [emphasis in original]).

{¶ 12} Guided by these principles, we readily conclude that the traffic stop here did not violate the Fourth Amendment. The Euclid police officer testified at the suppression hearing that the dark window tint was the first thing that he observed about Mathis's vehicle. He explained that based on his experience in handling hundreds of traffic stops involving window-tint violations, the windows on Mathis's vehicle were "readily identifiable" to him as being too dark. A window-tint test performed on Mathis's vehicle that night measured the light transmittance of the passenger-side window at 12 percent—approximately four times darker than the legal limit, *see* Adm.Code 4501-41-03(A)(3) (window tint on a motor vehicle that results in "a light transmittance of less than fifty per cent plus or minus three per cent" is unlawful); *see also* R.C. 4513.241(A) (authorizing the director of public safety to adopt rules governing the use of tinted glass in motor-vehicle windows), (C) (prohibiting a person from operating a motor vehicle on the roadway unless the vehicle conforms to the requirements of any rules adopted under R.C. 4513.241), and (K)(1) (classifying a violation of R.C. 4513.241(C) a minor misdemeanor). To be sure, the officer could not have known this precise light-transmittance percentage when he initiated the traffic stop, but his "experience and specialized

training" allowed him "to make inferences from and deductions about" the information available to him, *United States v. Martin*, 289 F.3d 392, 398 (6th Cir. 2002). Viewed objectively, then, the facts and circumstances known to the officer when he initiated the traffic stop gave him, at minimum, "'a particularized and objective basis for suspecting,'" *Navarette* at 396, quoting *Cortez* at 417, that Mathis was violating a traffic law. *See, e.g.*, *United States v. Shelton*, 817 Fed.Appx. 217, 219 (6th Cir. 2020) (officer with knowledge of window-tint law who observes a vehicle with tint substantially darker than permitted by law has reasonable suspicion to conduct a traffic stop); *United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008) (same).

{¶ 13} The error of the trial court in this case comes from its determination that the officer's motive for initiating the traffic stop was relevant to the Fourth Amendment analysis. The trial court made the factual finding that the traffic stop "wasn't about tinted windows" but was instead about the earlier armed robbery. Based on this finding, it made the legal conclusion that the officer lacked reasonable suspicion to continue the traffic stop after discovering that Mathis's vehicle did not match the vehicle described in the armed-robbery report. But that legal conclusion does not follow from the factual finding. Irrespective of whether the officer's reason for pulling Mathis over was or was not about tinted windows, the officer possessed—at minimum—a reasonable articulable suspicion that Mathis was violating a traffic law. The officer's testimony about what he saw on the night of the traffic stop was not challenged by Mathis, and the trial court did not find that the officer did not notice the tinted windows on Mathis's vehicle. The finding of fact that *was* made by the trial court—the purpose of the traffic stop—went to the subjective intent of the officer, which is an irrelevant factor under a Fourth Amendment analysis.

{¶ 14} The Eighth District furthered the error by failing to correct the trial court's erroneous legal conclusion. The appellate court correctly noted that it was

required to "defer to the trial court's findings of fact if [those findings of fact] are supported by competent, credible evidence" because the trial court was in the "best position to analyze the evidence and evaluate the credibility of the witnesses." 2024-Ohio-5707 at ¶ 24 (8th Dist.). It therefore adopted the trial court's finding of fact that the officer "did not stop Mathis for a window-tint violation but rather to investigate him as a suspect in the earlier robbery." *Id.* at ¶ 30. But the appellate court concluded that the officer "should have sent [Mathis] on his way," *id.* at ¶ 32, when he discovered that Mathis's vehicle did not precisely match the vehicle described in the armed-robbery report. This legal conclusion, again, does not follow from the finding of fact. That the officer may have stopped Mathis primarily to investigate the earlier armed robbery does not affect the fact that the officer also possessed, before initiating the traffic stop, independent reasonable suspicion that the window tint on Mathis's vehicle was too dark. The officer's discovery of the partial license-plate mismatch and minor paint-color discrepancy—even assuming that those differences were in fact enough to dispel the officer's second source of reasonable suspicion—did not require the officer to abandon the traffic stop. Accordingly, we adopt the State's sole proposition of law.

{¶ 15} It has long been recognized that an officer's subjective intent does not factor into an analysis under the Fourth Amendment. *See, e.g.*, *Whren*, 517 U.S. at 813; *Erickson*, 1996-Ohio-431, at syllabus. We break no new ground holding the same here.

### Conclusion

{¶ 16} The judgment of the Eighth District Court of Appeals is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded to the trial court.

————————————

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Owen Knapp, Erica Sammon, and Matthew W. Moretto, Assistant Prosecuting Attorneys, for appellant.

Cullen Sweeney, Cuyahoga County Public Defender, and Thomas T. Lampman, Assistant Public Defender, for appellee.

D. Andrew Wilson, Attorney General, Mathura J. Sridharan, Solicitor General, and Zachery P. Keller, Deputy Solicitor General, urging reversal for amicus curiae, Ohio Attorney General D. Andrew Wilson.

_____